UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| FREDY MORALES, | : | |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | NO. 3:09CV1372(MRK) |
| | : | |
| PETER MURPHY, WARDEN, | : | |
| | : | |
| Respondent. | : | |

## RULING AND ORDER

Currently pending before the Court is Respondent Peter Murphy's Motion to Dismiss [doc. # 8] the Petition for a Writ of Habeas Corpus ("Petition") [doc. # 1], brought under 28 U.S.C. § 2254, of Petitioner Fredy Morales. On June 2, 2004, Mr. Morales pled guilty in state court to a charge of murder, in violation of Conn. Gen. Stat. § 53a-54a, and he was sentenced to thirty-five years' imprisonment on September 17, 2004. He filed this habeas corpus action in August 2009, setting forth two grounds for relief: that he was deprived of effective assistance of counsel, in violation of the Sixth Amendment (Ground One); and that his guilty plea was not knowingly, voluntarily or intelligently made, in violation of the Fifth Amendment (Ground Two). *See* Petition [doc. # 1].

In response to the Court's Order to Show Cause [doc. # 2] why the relief sought should not be granted, Respondent filed the Motion to Dismiss [doc. # 8], which makes two arguments for why Mr. Morales' Petition should be dismissed. First, Respondent argues that Mr. Morales' petition for federal habeas relief is barred by the one-year limitations period set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132 § 101, 110 Stat. 1214, 1217 (codified at 28 U.S.C. § 2244(d)). Second, Respondent asserts that Mr. Morales has not exhausted the second ground for relief in his Petition, making his a "mixed petition" that must be dismissed

1

under 28 U.S.C. § 2254(b).

The Court begins with the Respondent's second argument. A petitioner seeking federal habeas review generally must exhaust all available state remedies prior to filing a federal habeas petition. *See* 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *Galdamez v. Keane*, 394 F.3d 68, 73 (2d Cir. 2005). To properly exhaust state remedies, a petitioner must present "the essential factual and legal premises of his federal constitutional claim to the highest state court capable of reviewing it." *Cotto v. Herbert*, 331 F.3d 217, 237 (2d Cir. 2003) (citation omitted); *Daye v. Att'y Gen.*, 696 F.2d 186, 194 (2d Cir. 1982) ("[A petitioner] must have set forth in state court all of the essential factual allegations asserted in his federal petition; if material factual allegations were omitted, the state court has not had a fair opportunity to rule on the claim."). Exhaustion does not require that the petitioner present the identical claim to a state court before seeking federal habeas relief; instead, it is enough that "[t]he claim presented to the state court . . . [was] the 'substantial equivalent' of the claim raised in the federal habeas petition." *Jones v. Keane*, 329 F.3d 290, 295 (2d Cir. 2003) (citations omitted); *see also Daye*, 696 F.2d at 194 (listing the "ways in which a state defendant may fairly present to the state courts the constitutional nature of his claim").

The Respondent concedes in his Memorandum in Support of the Motion to Dismiss that Mr. Morales presented the following argument, among others, in an amended state habeas petition: "Trial counsel representation of the petitioner in the trial court was not reasonably competent and as a result some or all of the above mentioned claims, the petitioner's please [sic] was not entered knowingly and voluntarily." Respondent's Mem. in Supp. of Mot. to Dismiss [doc. # 8-1] at 18 (quoting Appellate Record at 4, *Morales v. Comm'r of Corr.*, attached to Respondent's Mem. in Supp of Mot. to Dismiss as Appendix D). Respondent argues that:

2

> While [this] enumerated claim does state that his plea was not knowing and voluntary because of trial counsel's deficiencies, it was never presented to the state court as an independent due process violation. . . . Rather, [Mr. Morales] chose to pursue the constitutionality of the plea as a Sixth Amendment violation. He cannot now raise the voluntariness of his plea for the first time in federal habeas, but rather must give the state courts one full opportunity to pass on the constitutional claim.

*Id.* at 18-19. In other words, the Respondent asserts that since Mr. Morales raised the involuntariness of his plea before the state court as a Sixth Amendment claim, he has only exhausted this claim as it relates to the Sixth Amendment, and he may not argue in his habeas petition that his allegedly involuntary plea also violated the Fifth Amendment.

The Court disagrees. Whether presented as a Sixth Amendment or a Fifth Amendment claim, Mr. Morales' factual and legal arguments are the same: that his decision to plead guilty was not knowing and intelligent, and was therefore involuntary. In the state habeas petition, he argued that the *cause* of his involuntary plea was the ineffective assistance of trial attorney, which he labeled a Sixth Amendment violation. The state habeas court described Mr. Morales' argument as follows: "In essence, the petitioner asserts that his attorney was ineffective for not ensuring that he understood what he was doing when he accepted a plea agreement and pled guilty. He argues that this renders his guilty plea involuntary and that he is entitled to have the pleas set aside." *Morales v. Comm'r of Corr.*, No. CV054000361, 2006 WL 3491687, at *2 (Conn. Super. Ct. Nov. 15, 2008). In evaluating his ineffective assistance of counsel argument, the state habeas court applied the two-part test established in *Strickland v. Washington*, 466 U.S. 688 (1984), requiring Mr. Morales to show both deficient performance of counsel and some resulting prejudice. *See Morales*, 2006 WL 3491687, at *4-5. As should be clear, a necessary part of the prejudice that Mr. Morales argued he suffered was that he pleaded guilty involuntarily, *see id.* at *5 – the very argument he advances here, albeit untethered from the performance of his trial counsel – and the state habeas court squarely

addressed (and rejected) Mr. Morales' argument, *see id.* ("Here, the petitioner voluntarily entered into this plea bargain, and, he freely made the choice to give up his constitutional right to a trial in order to obtain favorable consideration upon sentencing."). Thus, the state court not only had a "full and fair opportunity" to resolve Mr. Morales' argument that his plea was involuntary, *O'Sullivan*, 526 U.S. at 842, it actually reached that issue. Mr. Morales has therefore exhausted this claim, *see id.*; *Jones*, 329 F.3d at 295, and Respondent's Motion to Dismiss [doc. # 8] the Petition on that basis is DENIED.

Respondent's second argument for dismissal – that the Petition is untimely – is more complicated. Under 28 U.S.C. § 2244(d)(1)(A), Mr. Morales was required to file his Petition within one year of the date on which the state court judgment "became final by the conclusion of direct review or the expiration of the time for seeking such review." Respondent contends that Mr. Morales' Petition was filed approximately four and one-half months beyond this one-year time limit, *see* Defs.' Mem. in Supp. of Mot. to Dismiss [doc. # 8-1] at 11, which Mr. Morales does not dispute, *see* Pet'r's Resp. to Mot. to Dismiss [doc. # 14] at 3. Instead, Mr. Morales argues that he is entitled to statutory and/or equitable tolling of enough of this time period to render his Petition timely. *See id.* at 2.

The statutory tolling argument is based on 28 U.S.C. § 2244(d)(1)(B), which provides for the tolling of the one-year limit if the petition was filed late due to the unconstitutional actions of the state holding the petitioner (here, the State of Connecticut). Mr. Morales argues that he is entitled to statutory tolling because the State has failed to fulfill its constitutional duty to provide him with "meaningful access to the courts." *Lewis v. Casey*, 518 U.S. 343, 351 (1996) (quoting *Bounds v. Smith*, 430 U.S. 817, 824 (1977)); *Bourdon v. Loughren*, 386 F.3d 88, 89 n.1 (2d Cir. 2004) ("The

constitutional right of access to the courts assures that prisoners, including pretrial detainees, have the tools they need in order to defend against criminal charges, attack their convictions and sentences (directly or collaterally), and bring civil rights claims challenging the conditions of their confinement."); *State v. Fernandez*, 254 Conn. 637, 653-655 (2000).  It is axiomatic that *Bounds* and its progeny do not require states to meet this obligation in a particular way; instead, they are permitted some leeway in providing "meaningful" court access.  *See Bounds*, 430 U.S. at 828 ("[T]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."); *id.* at 830 ("[W]hile adequate law libraries are one constitutionally acceptable method to assure meaningful access to the courts, our decision here . . . does not foreclose alternative means to achieve that goal."); *see also Lewis*, 518 U.S. at 351.

While acknowledging that the State is permitted some flexibility in meeting its obligation to provide inmates with meaningful court access, Mr. Morales argues that Connecticut has not done so with regard to the MacDougal-Walker Correctional Institution, where he is being held.  Mr. Morales says that there is no litigation services program at MacDougal-Walker; that its library does not have any material on federal law that is more recent than approximately 1994 (i.e., before AEDPA was enacted); that inmates are actively discouraged from assisting other inmates with their filings, and are prohibited from possessing other inmates legal materials; and that the federal habeas form is only available in English, which Mr. Morales cannot read.  *See* Pet'r's Resp. to Mot. to Dismiss [doc. # 14] at 5-8; Aff. of Scott Pickles, Appendix B to Pet'r's Resp.

The Respondent does not seriously dispute any of these factual contentions.  Instead, he

5

argues that the State has fulfilled its obligations under *Bounds* by providing inmates with public defenders to challenge their convictions in state court. *See* Respondent's Reply Mem. [doc. # 15] at 3-4. In support of that contention, Respondent cites two cases from the District of Connecticut. *See Fernandez v. Lantz*, No. 3:09CV1339, 2010 WL 1719359, at *4 (D. Conn. Apr. 27, 2010) ("A legal service plan, such as the assistance of the Office of the Public Defender, is an acceptable alternative to provision of law libraries."); *Smith v. Ford*, No. 3:07CV107, 2007 WL 763714, at *1 (D. Conn. Mar. 12, 2007) ("The Department of Correction meets its constitutional obligation of ensuring access to the courts for criminal matters, including habeas corpus, through the public defender program."). Both cases, however, dealt with claims that the inmates were not provided meaningful access to the *state* courts, for which state public defenders would be a logical way to ensure access. *See* Conn. Gen. Stat. §§ 51-296(a) (providing that indigent inmates are entitled to representation from the public defender program in any *state* criminal action or habeas corpus proceeding arising from a criminal matter). It is another question altogether whether the State's provision of public defenders to assist inmates in filing *state* habeas actions – without providing any other avenue for meaningful court access – fully satisfies its constitutional obligations, for state public defenders have no obligation to assist inmates with filing *federal* habeas petitions. *See Lewis*, 518 U.S. at 355 ("*Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.").

Therefore, in order to determine whether Mr. Morales is entitled to statutory and/or equitable tolling, *see Holland v. Florida*, ___ U.S. ___, 2010 WL 2346549, at *9 (June 14, 2010) (holding that

AEDPA's time limit is subject to equitable tolling), the Court must evaluate whether the State of Connecticut has afforded Mr. Morales with meaningful access to the courts since he has been incarcerated at MacDougal-Walker. The current state of the factual record does not permit that inquiry. Therefore, unless Respondent wishes to concede that Mr. Morales is entitled to statutory and/or equitable tolling, the Court will appoint Mr. Morales an attorney and will hold an evidentiary hearing to further develop the factual record in this regard. *See Adkins v. Warden*, 585 F. Supp. 2d 286, 290 (D. Conn. 2008).

However, the Court recognizes that Respondent may wish to concede Mr. Morales' right to tolling and proceed to the merits of his Petition. **Therefore, no later than July 14, 2010, Respondent shall notify the Court whether he would prefer to concede Mr. Morales' right to equitable and/or statutory tolling and proceed to the merits of his Petition; or if, instead, the Court should appoint Mr. Morales an attorney and schedule an evidentiary hearing. In either event, Respondent's Motion to Dismiss [doc. # 8] is DENIED, though he may renew it with regard to 28 U.S.C. § 2244(d) following the evidentiary hearing (if it does, in fact, occur).**

IT IS SO ORDERED.

/s/ Mark R. Kravitz
United States District Judge

**Dated at New Haven, Connecticut: June 30, 2010.**

7